## SHAW v. SAN DIEGO WATER CO.*

### L. A. No. 186; October 8, 1897.

50 Pac. 693.

**Water Rates.—A City Ordinance Providing a "Family Rate"** of $3.75 per month for water furnished for a private dwelling, declaring that where water is used for certain purposes, "or for any other purpose whatever, and no compensation is herein fixed therefor, and

---

*For subsequent opinion, see post, p. 814.

satisfactory rates cannot be agreed upon, the meter rates shall govern," giving any water payer the right to demand a meter and to pay a meter rate on tender of a certain amount for putting in the meter, and declaring the minimum meter rate to be $1.75 per month, does not authorize a water company, putting in a meter without the request of a consumer, to charge him a meter rate instead of a family rate, though it declares the rate per month for water "furnished to consumers through meters" to be a certain amount per 1,000 gallons, and provides that consumers paying the following monthly rates shall be entitled to use the following quantities of water: "$1 monthly, 4,000 gallons," and so on up to $2 per month.

**Water Rates.**—An Ordinance Providing a Lump Sum Per Month as rate for water furnished a private dweller, and allowing charges according to the amount used only in case the consumer asks for it, does not confiscate property, though the water company has theretofore put in meters of its own accord at its own expense.

APPEAL from Superior Court, San Diego County; J. W. McKinley, Judge.

Action by V. E. Shaw against the San Diego Water Company. Judgment for plaintiff. Defendant appeals. Affirmed.

Works & Works and Trippett & Neale for appellant; V. E. Shaw for respondent.

HAYNES, C.—This suit was brought by the plaintiff to enjoin the water company, a corporation engaged in supplying the city of San Diego and its inhabitants with water for domestic and other purposes, from shutting off and refusing to supply the plaintiff with water. Plaintiff had judgment, and the defendant appeals therefrom. The cause was tried upon an agreed statement of facts, which is set out in a bill of exceptions. Plaintiff owns two city lots, having a frontage of 100 feet, with a dwelling thereon, in which he and his family, consisting of eight persons, reside. The house contains one bathtub and two water-closets. Ordinance No. 295 of said city, fixing the water rates for the year beginning July 1, 1895, among other things provides the rates to be charged for the following uses: Section 1 (subdivision 1): "Bathtubs in private residences, 25 cents each per month." (4) "Water-closets in private residences, 25 cents per month." (17) "Dwellings, tenement houses, flats and other apartments, the same being occupied by not more than three persons, $1.00

per month, and for each additional person 15 cents per month." (25) "Irrigation of lawns, etc., one cent for every front foot per month." These provisions covered plaintiff's uses, and fixed for him a monthly rate of $3.65, known as the "family rate." Rates for hotels, lodging-houses, restaurants, etc., were fixed in a similar manner. Section 2 of said ordinance provides that "any water-rate payer shall have the right to demand a meter and to pay a meter rate upon tendering the person, company or corporation furnishing the water the sum of $7 for placing and connecting the meter with the supply pipe of such water-rate payer." The ordinance in force the preceding year contained the provision above quoted, and also permitted the water company to put in a meter "otherwise than at the consumer's request"; and while that ordinance was in force the water company put in and connected a meter with the plaintiff's supply pipe, but not at his request. During the month of July, 1895 (the first month the new ordinance was in force), plaintiff used, as shown by the said meter, 45,532 gallons of water, which quantity, at meter rates, amounted to $11.10; and the defendant demanded of the plaintiff, for the water so used during said month, $10.60. The plaintiff refused to pay said sum, and tendered to defendant the amount fixed by the family rate, which sum defendant refused to accept, and threatened to cut off and discontinue plaintiff's supply of water, and this suit is prosecuted to enjoin the defendant from so doing.

The only cases in which the ordinance provides for compensation according to the quantity used, thus expressly or impliedly referring to the use of meters, are the following: Water furnished to the city for flushing sewers and sprinkling streets, water for irrigating two or more acres in one tract, water furnished ships, water used by any rate payer who shall demand a meter and pay $7 for placing it, and the cases mentioned in subdivision 31 of section 1, which is as follows: "Where water is furnished for steam engines, gas machines or works, wash-houses, Chinese or otherwise, street and sidewalk sprinkling, or for any other purpose whatever, and no compensation is herein fixed therefor, and satisfactory rates cannot be agreed upon, the meter rates shall govern. The person, company or corporation furnishing water shall be entitled to collect a minimum meter rate of $1.75 per month while water is being furnished through such meter."

Defendant concedes that plaintiff never demanded that a meter be put in, but bases its right to charge the plaintiff at meter rates upon the following provisions of said ordinance: Subdivision 30 of section 1: "The rates for water furnished to consumers in any one month through meters are fixed as follows" (specifying a rate per 1,000 gallons, the rate diminishing as the quantity increases); and section 4, which reads as follows: "Consumers paying the following monthly rates shall be entitled to use monthly the following quantities of water: $1 monthly, 4,000 gallons; $1.25 monthly, 5,000 gallons; $1.50 monthly, 6,200 gallons; $2 monthly, 8,300 gallons."

Defendant's contention that the meter rates fixed by subdivision 30 apply to all cases where a meter has been put in, whether by the voluntary act of the water company, or upon the demand of the consumer, cannot be sustained. The ordinance fixes a family rate based upon the uses to which water is applied, and not upon the quantity used. Except in the cases specified, and which are above enumerated, the use of a meter is not made compulsory upon the consumer; but he is given the option of requiring the water company to put in a meter, and, if he does so, he must pay meter rates. The right to have water furnished at the family rate, where a meter has not been demanded, is absolute. The constitution vests the power to fix water rates in the common council, requires this power to be exercised annually, and provides that any person, company or corporation collecting water rates in any city or town otherwise than as so established shall forfeit his or its franchises and waterworks to the city or town (article 14, section 1). If the water company may of its own motion put in a meter, and charge a consumer meter rates who is entitled under the ordinance to family rates, it is obvious that it can, as to this class of consumers, change the rate at its pleasure, without his consent. This clause of subdivision 30, therefore, can only apply to those cases where the ordinance or the consumer requires the use of a meter. This is made clear by the provisions of subdivision 31, which requires that where water is used for certain purposes therein enumerated, "or for any other purpose whatever, and no compensation is herein fixed therefor, and satisfactory rates cannot be agreed upon, the meter rates shall govern." The compensation for plaintiff's use of water is distinctly provided for in the ordi-

nance, and is therefore excluded from the provisions fixing meter rates. Besides, if defendant's contention is sound, it would enable it to distinguish between consumers to whom the family rates are applicable, and apply different rates to individuals of a class from those prescribed by the ordinance for the whole of the class. Nor does section 4, hereinbefore quoted, relieve the defendant from the results to which its contention would inevitably lead. What that section means, it is not easy to determine; but it does not say that one entitled to family rates shall pay for any excess used above the quantities there stated at meter rates, or any other rate. Nor does it fix a meter rate, or, if it does, it is a rate inconsistent with the meter rates fixed by subdivision 30, which fixes the rate per 1,000 gallons, up to 10,000 gallons, at thirty cents per 1,000, while section 4 fixes the rate up to 5,000 gallons at twenty-five cents, with a slight diminution in price up to 8,300 gallons, at which amount the section ends. Not only so; it provides that a consumer paying a monthly rate of $1 shall be entitled to 4,000 gallons, while subdivision 31 provides that the minimum meter rates shall be $1.75 per month. Nor does it provide how the quantity shall be ascertained—whether by meter or otherwise. It cannot, therefore, affect the positive provisions of the ordinance fixing family rates by the use to which the water is applied, independently of the quantity used. This mode of determining the monthly rate cannot be reconciled with the construction given to section 4 by appellant. That the construction I have given to the ordinance may permit consumers to use a quantity of water entirely out of proportion to the rate paid is conceded, but that is the fault of the ordinance. The water company cannot, by attaching meters or otherwise, impose upon consumers rates neither authorized by the ordinance nor assented to by the consumer. Those paying family rates are entitled to all the water reasonably required for the uses specified, and the quantity used, especially upon lawns, varies from month to month. It is not necessary to determine whether the water company has any remedy where there is a wanton or negligent waste of the water; but, if there is such a remedy, it must be based upon allegations and proof of such waste, and would not appear from the simple statement that a given quantity was used.

It is alleged in defendant's answer that the number of meters put in and used by defendant at the time said ordinance was adopted was 1,616, that the cost thereof was more than $48,000, and, if not permitted to use them for the purpose of fixing rates, they will be rendered useless, and if compelled to take them out, or retain them in place without using them, they will be practically confiscated. It is contended that when the ordinance was enacted the common council knew that these meters had been put in, and that the meter rates were fixed with the intention that plaintiff should be charged meter rates. This argument would apply to all consumers upon whose supply-pipe meters were voluntarily placed by the water company, and the allegations of the answer and the argument would imply that all the meters were so placed. If so, and loss to the company results, it is not in a situation to complain. The ordinance of the preceding year, under which the meter was placed on plaintiff's supply-pipe, certainly gave defendant no assurance that it could ever charge the plaintiff meter rates, since it provided, in the same section which made it the duty of defendant to put in a meter upon the demand of the consumer, that "if any consumer, after having a meter put in, discontinues or abandons the use thereof, he shall pay to the owner thereof $3 for removing it." This provision shows clearly that the use of a meter as a means for fixing the rate to be paid was entirely optional with the consumer; and if it had been the intention of the common council in adopting the new ordinance, whether for the purpose of preventing loss to the water company, or for any other reason, to make so radical a change as to require all persons upon whose supply-pipes the defendant had voluntarily placed meters to pay meter rates, at the option of the company, it would be reasonable to suppose that language would have been used which would have expressed that intention, and I think it clear that no such intention appears. The judgment appealed from should be affirmed.

I concur: Chipman, C.

PER CURIAM.—For the reasons given in the foregoing opinion the judgment appealed from is affirmed.